Green, J.
delivered the opinion of the court.
Henry Winborn, the grand father of the lessor of the plaintiff, died in 1793, leaving Elizabeth, then married to John Guión, bis only child and heir at law. In January, 1815, Elizabeth died, leaving the lessor of the plaintif, then an infant, her only child and heir at law. — The husband of Elizabeth survived her and is still living. This suit was brought in less than three years after the plaintiff’s lessor arrived at the age of 21 years.
The land in controversy was granted to the grandfather of the plaintiff, who never had it in actual possession: nor did the mother of the plaintiff ever enter into possession thereof. The defendant has had possession of the land from a period, commencing before the death of the plaintiff’s mother.
Upon this state of facts, the plaintiff insists, that the act of limitations is no bar to his right of recovery, because his mother, not having been seized of this land, could not transmit the inheritance to him, — and consequently, he takes as heir of his grandfather, and not of his mother.
The position assumed by the plaintiff’ is certainly the doctrine of the common law, — -viz. “That when a person acquires an estate in fee simple in land by descent, it is necessary that he should enter on the lands, to gain a seizin in deed, in order to transmit it to his heir; for if he has seizin in law only, it will not be sufficient” — 3 Cruis. Dig. Tit. 29 c 3 § 5; 2 Thomas’ Coke 192, top page; 4 Kent Com. 30, 356. If, therefore, the heir, on whom the inheritance had been cast by descent, died before he had acquired the requisite seizin, his ancestor, and not himself, became the person last seized oí the inheritance, and to whom the claimants must have made themselves heirs.
But this rule of the common law, founded in feudal reasons, that whoever claimed by descent, must make himself heir to *571 the first purchaser, — and being heir to the person last seized, furnished presumptive evidence of that fact, — can have very little force, when applied to our modes of conveyance; and the circumstances of this country. Much of our land is waste and uncultivated, and in the actual possession of no one, — an actual entry on these lands would be often difficult, if not impossible; and if made, the evidence of it could not be easily preserved. — To a country such as this, a strict adherence to the common law doctrine of seizin, would be exceedingly inconvenient, and destructive of rights, which it is the office of the law to preserve. It is a settled point with our courts, that the title to wild uncultivated lands, draws to it the possession, so that an action of tresspass may be maintained by the owner, who is deemed to be in possession against any one entering on the land and cutting the timber. 4 Kent Com. 30.
This constructive possession continues, in judgment of law, until an adverse possession be clearly made out, 4 Kent 30. It may well be doubted, therefore, whether the common law principle, for which the plaintiff contends, independently of any statutory provision, ought to be maintained in all its vigor in this country.
This question, however, is put beyond doubt, by our statute of descents, 1784, c. 22, § 2, which provides, that, “when any person shall die seized or possessed of, or having any right title or interest in and to any estate of inheritance of land, or other real estate in fee simple, and such person shall die intestate, his or her estate or inheritance shall descend,” &c. By the statute the inheritance is transmitted, whether the person dying intestate had been seized in deed of the land or not. If the intestate had any “right, title or interest” in the estate, it is transmitted to the heirs of such person. These words necessarily included the interest Mrs. Guión had in the land in controversy, and which was transmitted, at her death to her son, the present plaintiff.
If this view of the effect of our statute required support, it is to be found in the construction chancellor Kent gives to the New York statute upon this subject. That statute contained provisions similar to those in our act 1784. He says, *572 4 Kent Com. 287, “ The New York revised statutes have wisely altered che preexisting law upon this subject; and they have extended the title by descent generally to all the estate owned by the ancestor at his death; and they include in the descent every interest and right, legal and equitable, in lands, tenements, and hereditaments, either seized or possessed by the intestate, or to which he was in any manner entitled, except leases for years, and estates for the life of another person,” New York Rev. Stat. Vol. 1, 751, § 1; 754 §27. The words in the statute, “any right, title or interest,” are as comprehensive as the words of the law of New York, and if the rule of the English law upon this subject be abolished in that state, it is in like manner abolished here, 4 Kent’s Com. 388.
Note. The statutes regulating DESCENTS — April, 1784, c. 22, October, 1784, c. 10, 1796, c. 13 — and the cases decided thereupon, present the following problems and their solutions.
1. Dying seized, without reference to the source whence the seizin proceeded, leaving issue. — In this,case, the estate descends to the sons and daughters as tenants in common. 1784, c. 22, s. 2, clause 1st.
2. Dying seized, by purchase, without issue. To the brothers and sisters of the whole and half-blood, viz, of the paternal and maternal lines, alike, as tenants in common. 1784, c. 22, s. 3, clause 1st, 1784, c. 10, s. 2, 1796, c. 13. JYicJiol v. Dupree, 7 Yerger, 415; Bullard v. Grijin, % Law Repository, 458; and the estate will open to let in after born brothers and sisters, Cutlar vi Cutlar, 2 Hawk,,324.
3. Dying seized, by purchase, or some original acquisition, other than descent or gift from a parent, not having any heirs of the body, nor any brother or sister, or the lawful issue of such—
If the father be living, to him.
If hebe dead,and the mother living, to her for life. Swann v. Mercer, 2Hay«\ wood,115; University v. Holstead, 2 Law Repository, 406; Wilsay v. Sawyer, 1 Murphey,.403; Roberts v. Jackson, 4 Yerger, 308; 10 Yerger, 451.
If neither be living, to the heirs on part of the father.
For want of them, to^ the heirs on part of the mother. 1784, c. 22, s. 7, clause 2d, 1784, c. 10, s. 3. 7 Yerger 423.
4. Dying seized, by derivation from either parent, (otherwise than by descent or by purchase from either,) without leaving any issue, or having any brother or sister or the lawful issue ^of such to the parent from whom the estate was :; derived in fee simple. If such parent be dead, to the heir3 on the part of such parent. 1784, c. 22, s. 7, clause 1st. Butler v. King, 2 Yerger, 115. 116, Swanny. fiercer, 2Haywood, 115 et seq. and 246, et seq.
*572 We. think therefore, that the plaintiff was entitled as heir of his mother to the land in controversy, and that as the statute of limitations commenced running in her lifetime, it continued running notwithstanding his infancy, and forms a com-, píete bar to his recovery.
Affirm the judgment
5. Dying seized, by descent from either parent, without issue. To the brothers and sisters of the whole and half blood, on the part of the parent from whom the estate descended, and their issue. 1784, c. 22, s. 3, proviso 1st, 1784, c. 10, s. 2. Pipkin v. Coort 1 Law Repository, 103; 2 Murphey 231, S. C; Plam v. Martin, 1 Hawk 423; Butler y. King, 2 Yer. 115. In default of them — to .the brothers and sisters of the half blood on part of the parent from whom the estate did not descend. Id. and 1796, c. 13. Ballard v. pfill, SJVIurphey, 410; Seville v. Whedbee, 1 Devereaux* 160.
6. Upon the hypothesis in 3STo. 5, the nephews aud nieces of the propositus take with his surviving brothers and sisters, per stripem. 1784, c. 22, s. 3, proviso 2d; Lewis y. Claiborne, 5 Yerger,369.
7. Among lineal descendants and collaterals respectively, further removed from the propositus than grandchildren, and nephews and neices, the above rules apply, 1784, c.22, s. 4. That is— In cases where the intestate acquired the estate by descent, and the claimants are in equal degree of kindred, the blood of the first purchaser shall prevail. But where the claimants arenot in equal degree of kindred, then proximity of kindred shall be preferred, without any regard to the blood of the first purchaser.
And in all cases, where the intestate, acquired the estate, by purchase, proximity of kindred shall prevail, without giving any preference either to the pa-, ternal line, or to the blood ofthe first purchaser. 2 Haywood, 255,Brown, in argument.

Descent among illegitimates.

8-. 1. If a woman die intestate,11 without other than illegitimate children, they take her estate, real and perssonal, by the general rules of descent and distribution, 1819, c. 13.
2. If a bastard die intestate, without issue, his estate goes to his brothers and sisters, i. e. to his mother’s children.
3. A child of color cannot inherit the estate of its mother’s husband, unless ¿he mother or husband was a person of color, 1825, c. 15.
4. A private law legitimating a bastard as to his putative father, does not render either the father, or the collaterals from him, capable of succeeding to the bastard. MCormick y. Cantrell, 7 Yerger, 515: 4 Devereaux, 11, Drake v. Drake.
9. A posthumous child of a testator, not proviáedfor in the will, takes such share of his estate as would have fallen to it, in case of intestacy, — to be contributed by the devisees and legatees, in the proportion of their several devises and be-, quests to the whole estate. 1823, c. 28.